IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No:   19-cv-3250 |
| | ) | |
| $2,930.00 IN U.S. CURRENCY, | ) | |
| | ) | |
| Defendant. | ) | |

**VERIFIED COMPLAINT FOR FORFEITURE**

NOW COMES the plaintiff, the United States of America, by John D. Hoelzer, Assistant United States Attorney, and respectfully states as follows:

**Nature of the Action**

1.      This is an action *in rem* to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of $2,930.00 in U.S. currency (defendant currency), which constitutes (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq.*); (2) proceeds traceable to such an exchange; or (3) moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act.   The defendant currency further constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 (money laundering) and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## The Defendant *In Rem*

2. The defendant is $2,930.00 in U.S. currency.

3. The defendant currency was seized by the Illinois State Police on April 26, 2019 and was deposited into an account maintained by the U.S. Marshals Service on or about May 6, 2019. The defendant currency is, therefore, in the custody of the United States.

## Jurisdiction and Venue

4. This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. Pursuant to 28 U.S.C. § 1355(b)(1)(A), this Court has *in rem* jurisdiction over the defendant currency and venue is proper in this district because the facts which give rise to this forfeiture occurred in Sangamon County, Illinois.

## Basis for Forfeiture

6. The defendant currency is subject to forfeiture pursuant 21 U.S.C. § 881(a)(6) because it constitutes (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq.*); (2) proceeds traceable to such an exchange; or (3) moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act.   The defendant currency further constitutes property involved in a

transaction or attempted transaction in violation of 18 U.S.C. § 1956 (money laundering).

## Facts

7.   In or about April 2019, Drug Enforcement Administrative (DEA) agents began an investigation involving the drug trafficking activities of Kenneth Baker (Baker). A Confidential Source (CS) revealed to law enforcement that Baker was drug trafficking heroin and that Baker was the CS's source of the heroin. When the CS and Baker discussed a drug transaction, they normally would "FaceTime" each other. The CS indicated that Baker would be traveling soon to Springfield, Illinois, and would deliver 200-500 grams of heroin to the CS.

8.   On April 23, 2019, the CS and Baker in the presence of law enforcement had a "FaceTime" conversation where Baker and the CS discussed drug prices and the CS's drug debt owed to Baker. During that conversation, Baker told the CS that he was planning to travel towards Springfield, Illinois, and would deliver the heroin to the CS. Baker also told the CS that he recently received 20 (meaning $20,000.00) in drug proceeds from a customer, and Baker gave the customer 3 of them (meaning 300 grams of heroin) and an additional 200 grams. Baker said that the customer would turn that into 800 or a whole (meaning 800 grams or a kilogram of heroin). When discussing the outstanding drug debt, the CS told Baker that he/she would have $8,200.00 to $8,300.00 to give to Baker for previously obtained heroin from Baker.

9. Between the dates of April 23-26, 2019, several recorded calls were made between the CS and Baker. In those recorded calls, Baker and the CS agreed that the CS would pay $8,000.00 for heroin that Baker previously fronted to the CS. Baker told the CS that he would be transporting between 200 and 400 grams of heroin on his way to St. Louis, Missouri, on April 27, 2019, and would make a stop in Springfield to get the partial payment that the CS owed to him (Baker). Baker said it was better to do it that way, as he (Baker) could not find anyone to transport the heroin to the CS as well as pick up the money from the CS. The CS offered that he/she would drive to Chicago to get the heroin from Baker a few days later. Baker told to the CS that this heroin was better quality and was the "grey kind." The CS and Baker arranged to meet at the Shell gas station, located on Clearlake Avenue in Springfield, Illinois, on April 27, 2019. In a subsequent recorded call, however, the CS told Baker he/she was not able to meet him in Springfield on April 27, 2019, so they changed the meeting date to April 26, 2019.

10. Law enforcement met with the CS, and placed audio/video recording devices on the CS and inside his/her vehicle. At that time, agents provided $8,000.00 in Official Advanced Funds (OAF) to the CS to pay Baker for previous heroin that he (Baker) fronted to the CS.

11. An Illinois State Police (ISP) Air Ops' helicopter observed Baker's white Dodge Ram traveling southbound on Interstate 55 near Sherman, Illinois, until it parked near a gas pump at the Shell gas station in Springfield, Illinois.

12. Agents conducting ground surveillance saw the CS park his/her vehicle and walk inside the Shell gas station. The CS then exited the gas station and entered Baker's Dodge Ram. Shortly thereafter, the CS returned to his/her vehicle and both the CS and Baker drove away in their respective vehicles.

13. A later review of the audio/video recordings showed the CS holding the OAF as he was driving. When the CS approached the vehicle, Baker told the CS to "hold down the money" (referring to keeping the money out of sight). A further conversation ensued where Baker and the CS talked back and forth about the amount of money the CS owed to Baker for the heroin that Baker previously fronted to him/her.

14. Following the meeting between the CS and Baker, law enforcement met with the CS at a pre-arranged location where the CS and his/her vehicle were searched for contraband with negative results. When agents questioned the CS about going inside the gas station, the CS stated that he/she went inside the gas station because he/she needed to use the bathroom upon arrival.

15. The CS told agents that once inside Baker's vehicle, he/she handed the $8,000.00 dollars in OAF to Baker. Baker asked the CS how much money was there, and the CS responded "$8,000.00." The CS asked Baker if the current balance he/she owed to Baker was $9,800.00, and Baker replied that it was $11,000.00.

16. Surveillance continued on Baker's Dodge Ram as it traveled on Interstate 55 to an exit just north of Glenarm, Illinois. Agents previously formulated a plan to have a ISP trooper initiate a traffic stop on Baker in the Dodge Ram to obtain the $8,000.00 in

OAF. Agents were aware that Baker had a full extradition arrest warrant issued from Jasper County, Indiana. The ISP officer had previously been informed about the warrant and had been provided with a photo of Baker.

17. The ISP trooper initiated a traffic stop at southbound Interstate 55 at approximately milepost marker 85. Once Baker was identified through his driver's license, the ISP trooper ordered Baker to walk to rear of his vehicle where the ISP trooper handcuffed him. A search of Baker's person revealed an undetermined amount of U.S. currency (later determined to be $2,930.00) in Baker's front pants pocket. When questioned about the currency, Baker told the trooper there was $1,700.00, and that he obtained the currency through "contracting work." When the ISP trooper questioned Baker about the U.S. currency again, Baker replied there was $2,000.00 in his pocket. The ISP trooper counted the U.S. currency in front of Baker and told Baker there was "roughly" $2,700.00. Baker replied "yes" to the ISP trooper regarding the amount of $2,700.00.

18. "Kain," an ISP trained and certified detection canine, conducted a free air sniff on the outside of Baker's vehicle. Kain made a positive alert on the driver's side door of Baker's vehicle.

19. Following the canine free air sniff, agents searched Baker's vehicle and located $8,000.00 in OAF (later determined to be $7,000.00 in OAF) concealed underneath the center console, a vape pen which Baker claimed had CBD oil in it, and what appeared to be cannabis shake. When law enforcement advised Baker that they

discovered money concealed in the center console, Baker replied that he had proof the money was legitimate. In fact, Baker stated that he had checks for $50,000.00 to show that the money was legitimate.

20. Baker was arrested on the outstanding warrant from Jasper County, Indiana and transported to the Sangamon County jail. Agents placed the OAF in an overnight safe at DEA's Springfield resident office for safe keeping.

21. On April 29, 2019, agents obtained the U.S. currency from the safe and discovered that $1,000.00 in OAF was missing. Because agents believed the missing $1,000.00 in OAF may have been in Baker's Dodge Ram, a search warrant was obtained and executed on his vehicle. Agents did not find the missing $1,000.00 OAF in Baker's vehicle.

22. The CS was contacted by law enforcement about the missing OAF. At first, the CS said that Baker gave him/her $200.00 of the OAF. When the agent said the CS would need to return the OAF, and that it had to be the exact $100.00 bills used during the transaction with Baker, the CS responded that he/she could not return those exact bills. When questioned further about the missing OAF, the CS confessed that he/she actually took $1,000.00 in OAF and not $200.00 as previously stated, because he/she had "bills to pay."

23. On June 3, 2019, Baker was interviewed by agents, which was audio and video recorded. When questioned about his financial stability, Baker advised that he owned Epic Investments Group, LLC., a general contracting business, for the last eight

7

years, and his salary was approximately $190,000 to $200,000 a year. Baker also advised that his wife was a beautician and owned her own business making approximately $100,000.00 a year. Baker also claimed that he owned 2-3 properties free and clear.

24. When questioned about his activities on April 26, 2019, Baker said he was traveling from Chicago to East St. Louis, Illinois, to watch his daughter's tournament. Baker said he stopped in Springfield to get gas and then planned to go to Alton, Illinois, to purchase a boat for $7,000.00 to $8,000.00. Baker said that he and "Mike" with Master Sounds in Chicago planned to fix up the boat together and sell it. Baker believed the boat was called a Carnival boat but was unsure.

25. When questioned about the money that was concealed underneath the center console, Baker responded that it was concealed for safety reasons because contractors in the Chicago area had been robbed of money. Baker advised that the "$2,700.00" in his pocket was spending money.

26. Law enforcement advised Baker that the total amount of U.S. currency seized was $9,920.00 not $10,700.00 as documented by the Sangamon County State's Attorney's Evidence Release Authorization Form. Baker was also advised that the money concealed underneath the center console totaled $7,000.00, and that the amount seized from his pocket was $2,930.00. Baker disagreed and said that the ISP trooper counted $2,700.00 in front of him at the traffic stop.

27. When agents told Baker that there was $7,000.00 instead of $8,000.00 seized from underneath the center console, it seemed to them that Baker's only concern

was the extra $230.00 seized from his pocket. Further, Baker said that he had financial documents to show proof that the money was legitimate, and then texted a Draw Request from the U.S. Department of Housing and Urban Development to the agent. It was noted by agents that neither Baker's name nor his business were listed on the form to reimburse him for services rendered and did not mention the $2,930.00.

28.     On June 4, 2019, Baker was contacted by law enforcement to ask for additional financial documents to prove his claim was legitimate. Baker replied that he would send more documents. When the agent asked for bank withdrawal slips or documents to show the legitimacy of the seized money, Baker said he did not have financial slips to "carry around cash." Baker, therefore, provided no such other financial documents to law enforcement.

29.     Law enforcement conducted a search of Master Sounds in Chicago, Illinois on the internet, with the address provided by Baker, and found no such business in that area. A second search was also conducted by law enforcement regarding Baker's contracting business, Epic Investments Group, LLC (Epic). Law enforcement determined that Epic dissolved on December 14, 2018, and did not currently have an active permit to perform contract work in Chicago, Illinois.

30.     Baker's criminal history revealed convictions for distribution of cocaine; conspiracy to distribute and possession with intent to distribute 50 gram or more of cocaine base (two convictions); resisting law enforcement; disorderly conduct; and a

judgment for revocation of supervised release/probation. In addition, Baker has also been arrested for assault on four occasions and for damage to property.

  31. Based on the detailed facts above, which support a reasonable belief that the Government will be able to meet its burden of proof at trial, the defendant currency is subject to forfeiture pursuant 21 U.S.C. § 881(a)(6) because it constitutes (1) moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act (21 U.S.C. § 801, *et seq.*); (2) proceeds traceable to such an exchange; or (3) moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the Controlled Substances Act.   The defendant currency further constitutes property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956 (money laundering) and is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

  32. WHEREFORE, the United States of America prays that this Court enter an order forfeiting the defendant currency to the United States of America for disposition according to law, for the issuance of a warrant *in rem*, for costs of suit, and for such other relief as the Court may deem necessary.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

By: /s/ John D. Hoelzer
John D. Hoelzer, IL Bar No. 6295098
United States Attorney's Office
318 South Sixth Street
Springfield, IL 62701
Telephone: 217-492-4450
Email: john.hoelzer@usdoj.gov

VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct based on information and belief.

Executed on this 28th day of October, 2019.

                                                                            s/Joseph Green

                                         Joseph Green, Special Agent
                                         Drug Enforcement Administration

JS 44   (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

### DEFENDANTS
$2,930.00 IN U.S. CURRENCY

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [X] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question  *(U.S. Government Not a Party)*
- [ ] 4  Diversity  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☒ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability |  | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander |  | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability |  | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine |  | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence |  |  | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General |  |  | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | **IMMIGRATION** |  |  |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 448 Education / ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 555 Prison Condition |  |  |  |
|  | ☐ 560 Civil Detainee - Conditions of Confinement |  |  |  |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6), 18 U.S.C. § 1956, 18 U.S.C. § 981(a)(1)(A)
Brief description of cause:
Civil Forfeiture Action

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
**DEMAND $**
CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE
SIGNATURE OF ATTORNEY OF RECORD
s/John D. Hoelzer

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.
  (b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)
  (c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.**  (See Section III below**; NOTE: federal question actions take precedence over diversity cases.)**

III. **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

IV. **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

V. **Origin.**  Place an "X" in one of the six boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

VI. **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

VII. **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.